Good morning and thanks for hearing us this morning. This is an appeal from an order staying litigation pending arbitration and a subsequent order confirming an arbitration order. The issue here is whether a narrow arbitration clause giving an accounting firm 30 days to resolve a disagreement as to any item included in an earn-out report can be interpreted to govern a dispute as to whether a party breached a post-closing covenant. We submit that the parties did not agree to arbitrate alleged breaches of post-closing covenants. And that fact is apparent from the plain language of the contract, the choice of arbitrator, the procedural constraints placed on the arbitration process, and the time constraints placed on the arbitration process. Now the arbitration clause That's sort of like if we look at all the circumstances it seems like that's what they want. That's right, Your Honor. That's not the standard when we're looking at whether there's been an arbitration agreement, is it? Well, the standard is It's not like can we construe this if we look at everything in gross? It's got to be kind of compelled that the arbitration is limited, doesn't it? Well, to determine whether or not a dispute comes within the arbitration clause, you look at the plain language of the agreement. And you start with the rules of construction that are under the apical law, which would be Delaware. But you would disagree that if there's even If a dispute is even arguably within the scope of an arbitration clause, the dispute is arbitrable. I would, Your Honor. You would disagree with that? I would, Your Honor. And here's why. I think you only get there if you determine there's an ambiguity in the language. In this case, there's no ambiguity. There's no presumption of arbitrability? There's no presumption of arbitrability. So if we find a presumption of arbitrability in our precedents, then you would lose. That's right, Your Honor. So I think in Mitsubishi says there's a presumption of arbitrability of disputes. Yes, but Granite Rock also makes clear that the presumption of arbitrability only applies when the arbitration agreement is ambiguous about whether it covers the disputes. So you don't The language of the agreement says, with respect to resolving disputes regarding the earn out report. That's right. But then it also says But to figure out whether the earn out report is correct, you have to look at what goes into the earn out report, don't you? Right, we do. Under at least one interpretation of those words? Well, Your Honor, under a Delaware interpretation of contract construction, specific language governs general. Specific limits general. So they say in that clause, with respect to the earn out report, now keep in mind here, they're talking about It says regarding the earn out report. Regarding the earn out report, you look at the procedures applicable to the final balance sheet. Where does it say that? It's in section 1.3 of the agreement. I'm looking at paragraph 5. Are you talking about somewhere else? No, Your Honor. I'm talking about subparagraph 5 there. All right. It says With respect to the process for finalizing the report and resolving disputes regarding the report, in ordinary plain language would mean disputes regarding the amounts contained in the earn out report, whether they're properly arrived at. You can say, well, if you look at everything else, it doesn't really mean that. But that's what the superficial meaning of it is, at least, isn't it? But, Your Honor, you have to go beyond the superficial. Why do you say that? I thought, as long as there's an ambiguity, we presume that there's arbitration. Because this agreement sends you to another place within this contract with more specific language that says that you'll follow the procedures set forth in section 1.5B, C, and D. I realize that we're talking about disputes as to an item included in the earn out report. And we know from the definition of earn out report in the contract itself that the earn out report is made up of a reasonable detailed statement of revenues broken down by service and product and by customer. So what you end up with in an earn out report is a string of names and amounts. That's all you end up with. You don't end up with any statement with respect to how the business was operated, what employees were retained after the closing, none of the information that you would need to resolve the type of dispute that was actually arbitrated. I want to go back to the fundamental issue about the portion that you agree, I guess, was arbitrable and what's not. I mean, is the problem that when the arbitrator got into the operational issues that that exceeded the scope? Because clearly in the documents, there was some part of this related to the earn out that was subject to arbitration, and the arbitrator – I mean, the parties agreed that the FAA arbitrator would do that. So what is it that actually went beyond this that you say was not arbitrable? And I assume you have some problems with the fact that the judge said, okay, go ahead and arbitrate all of this. That's right. The judge didn't discriminate between the various claims that were included in the dispute notice. And I would say that in our view, an issue like whether or not accounting principles were followed, I think they pointed to FASB, whether or not it was followed in the case of the earn out report. That would be something subject to arbitration. Where they go beyond, though, and what the appellee here admits that was actually arbitrated was what was the meaning of a contract term. In other words, what was the meaning of the term, you shall operate the business substantially in the same way as was operated pre-closing? And then apply – Will that affect what the numbers in the earn out report? It would affect the numbers in the earn out report. So it's a dispute regarding the earn out report. At least one way to read that language. Well, one way to read that language if you ignore the other portion of the green. I don't see how it ignores it when – and I'm not trying to be petty with you. I mean, you just have to persuade me that this language has a limitation in it that it's hard for me to find. It says, with respect to these two items, you'll use procedures found elsewhere. It seems to me you look at those two items and see whether it's a dispute that's with respect to those two items. And on its face it appears to be. And you make a pretty strong argument, I think, that, well, if we look at other parts of the contract, we can see that this is what they really meant. But that's resolving an ambiguity. Well, just because – I mean, Delaware's – Delaware law is clear. I'm not so concerned with Delaware law as the language of this provision here. And I think another question is, if you find that with respect to terms such as the one that Judge Rogers just raised, if these things are inextricably intertwined, what does that do to your argument in terms of whether or not this exceeded the scope? If you have to look at other terms in order to decide whether they – how they impact the earn-out report, because you've conceded that these questions do sort of affect the numbers. Well, they do affect – no question they do. But I do think that you have to give every word in the contract a meaning. And you can't just selectively say, well, here's a language that purports to say we're going to do anything regarding earn-out report. And, again, Your Honor, I would say the language says earn-out report, not earn-out payment. And I think that's a distinction as well. It says disputes regarding the earn-out report. Right. Which is? In ordinary language, that would include disputes regarding the amounts in the earn-out report. Right. And maybe it doesn't mean that. But it would seem like that would be at least one of the possible readings. Well, but if the parties had intended something broader, they could have easily said earn-out payment. That's a good argument for resolving the ambiguity differently. Your Honor, I just respectfully disagree that there's an ambiguity here. And I guess that's where we're – Well, I'm just trying to figure out what your argument is. But I think I see you. So if you look at that more specific language and using Delaware contract construction principles, which Delaware contract law applies here, you look at that specific language to limit. And if there's a conflict, Your Honor, Delaware law tells us that the specific language controls. So you have to look at that. Looking at the other circumstances – and I appreciate the fact that you're looking at the plain language here to make the determinations go. But look at the other circumstances here I think are important is the time limit placed on the arbitration here, 30 days. The fact that you're selecting an accounting firm to handle the arbitration. Sophisticated parties can choose whoever they want to arbitrate a dispute. No question about that. And they can make us – I find all of that pretty persuasive. Maybe. Probably would persuade most arbitrators. Now, I will say that I want to address briefly the arguments that the unique brought up in this case in terms of the controlling precedent in JPD if the court wants to hear this. Now, I think JPD is clearly distinguishable. There in JPD they're making the exact same argument that I'm here before making here. And the court said we find that argument convincing except for this other language in the agreement where it says – So the other language is in all issues having a bearing on such dispute. The real question is, is that comparable language to resolving disputes regarding the earn-out report? Why are those two – why do those two clauses not do the same work in both agreements? Well, and I would say they do not do the same work because all disputes is a much broader phraseology than regarding the earn-out report. And the language in our contract, as I pointed out, is further limited by language elsewhere in the contract. And you've got to take that this arbitration clause is. You have to ask yourself, well, what's the limit to the arbitration clause here? Because you can make an argument that anything fits within this arbitration. Well, it would have to be something that affects the numbers in the earn-out report. Well, I mean, would it though? Because one of the things – Why? I mean, otherwise you could say – Okay. Well, in that same – You could say regarding the earn-out report if it's some entirely different provision that just has earn-out report mentioned in the footnote or something like that. Is that what you're saying? Well, in that same – in that same earn-out provision, Your Honor, there is a section that deals with the timing on submitting an earn-out report. Let's say that my client never submitted an earn-out report at all. Would the language then dictate that we go to an accountant firm to determine whether or not we should have submitted an earn-out report at all? Well, if you agreed to resolve that dispute by arbitration, then I guess so. And I guess that's the point, Your Honor. We don't think we agree to it. Thank you, counsel. Good morning. May it please the Court, Randy Miller on behalf of the Appellee's Unique Software Solution and their owners, Valerie and Mike Hunter. I think given the panel's obvious familiarity with the terms of the contract, I'd like to jump directly into JPD and talk about why that case would be guidance for the dispute here. Could you then distinguish broad enterprises? Yes, Your Honor. The Court in JPD recognized that the best place to start is, of course, the language of the agreement. The Court also then recognized, as has been brought up this must favor and result in the matter being sent to arbitration. Where does that come from? Is that from the Federal Arbitration Act or just from common law? Federal Arbitration Act, Your Honor. In JPD, there were two key aspects. One is that in the set of dispute criteria, the language of JPD actually was more restrictive than that in this case. In that, it found that if the sellers disagreed with the calculation, that was a term that they used. And then, as the Court has pointed out, they also allowed that such dispute shall be submitted to and all issues having a bearing on such dispute shall be resolved by the accountant referee. As the Court has, excuse me, the language here is more expansive. And I'd like to walk through several other key aspects of the provision. But relevant to JPD, this provides a much broader element in that the Urnot report includes, as the Court has pointed out, a variety of inputs, including listings involving products, involving customers. It also makes it seem strange that you would have an accountant resolving that. Not necessarily, Your Honor. And for one of the points, I would look at the Ms. Hunter's point about dispute began with, it appears to us that a substantial amount of the revenue should have been recognized in 2009. But instead, it is being deferred to later years. And if you look at the interplay of subsection 6 of 1.3c, it also talks about includable revenues. And it talks about specifically mandating the inclusion of revenues from existing products. If you walk through the language of this contract, specifically in 1.3c subsection 5, it includes a need to identify products, customers, and services specifically because subsections 1.3c, 6, and 7 offer what was essentially designed to be an apples-to-apples comparison. In this case, it came down to determining, similar to the situation in JPD, that an accountant arbitrator was as well qualified as anyone to determine, well, did the includable revenues were, in fact, included? Many of the issues turned on recognizing revenue, recognizing includable revenue, and whether in the conversion from a cash-based accounting, which recognizes cash on the barrel head, to a GAAP system dealing with items like recognized revenue, that there would be some difficult questions that the accountant would be uniquely situated to sift through. Is that not a different concept from whether the buyer entered a separate format, a separate contractual method? An earn-out report says, flow through onto this earn-out report the monies that were earned this year. Your complaint is not that the earn-out report doesn't reflect the monies that were earned this year. Is it your complaint that the buyer entered a different type of contract so that some of the monies were earned this year, some of the monies were earned next year, and some of the monies were earned the year after that? Is your complaint that they didn't flow it through, or is your real complaint that they contracted in a different way that denied you revenue that, had they contracted the way you wanted them to, would have flown through in 2009 or 2010? Both, Your Honor. Some of the disputes had to deal with revenue that the appellant had received. This was money that was in their bank account, but simply had not recognized. An example would be training fees and set-up fees. So if you have a one-year contract, which was the existing product, this is a product that involves the hosting of documents about workplace safety. And this existing product on that was a one-year software licensing agreement that would then include set-up fees that would be recognized this year. Part of the dispute was they took those products and changed to fundamentally a three-year subscription. And one of the ways that creates a difference is that these set-up fees, although received in year one, are only recognized ratably over the entire three-year period of the subscription. Are they only recognized across the three years, or was the contractual arrangement that they would pay X dollars per year for the services? I'm trying to ask, is the money not fungible? You're wanting to say that, well, the first year of that contract, that was really money for set-up. And is it what they were saying is, no, we've changed the way we contract. We contract now over a three-year period. You pay ratably across that period some services and some product in year one and year two and year three. Am I right in your saying, no, no, no, set-up should have been pulled out of year two and three and put into year one, correct? Correct. Does that make the earn-out report incorrect for year one, or does it make it a correct reflection of the way they now have chosen to contract? I would say it makes it incorrect when read in the context of 1.3c, which governs the earn-out, including 1.3c6, which the opponents say would not apply here. 1.3c6 is a section entitled Guidelines Regarding Calculating Revenue. Now, I would start by saying 1.3c is a section entitled Earn-Out. I'm sure the Court has read this. Certain provisions include the hurdles. Some provisions include the records and the dispute resolution as it ties, and subsection 6 is Guidelines, 7 would be covenants. So in response to your question, Your Honor, what I would say is in subsection 1.3c6, it defines what includable revenue must be. So my answer to you is we believe the information was, in fact, incorrect. The revenue was not accurately reflected. Returning to JPD and Your Honor's question regarding BRAT, I would say walking through this section, the earn-out report is defined not only to include revenue as modified as includable revenue, product, services, and customer, but it also includes on page 8 of the Asset Purchase Agreement 1.3c5 a determination. Now, this is notable because JPD called for a calculation. This is a determination. It's a wider term. And as the Court pointed out earlier, it includes the earn-out report, excuse me, with the process for finalizing the earn-out report and resolving disputes regarding the earn-out report, the parties agree that each shall have the rights and each shall follow the procedures set forth in 1.5b, c, and d, as if the references therein to the final balance sheet were references to earn-out report. If you look very briefly to 1.5b, the written notice can include, and I quote, any item included in the earn-out report. And that, if you come back, would strongly support the reading that Judge Campbell had in the Court below. Now, I would point out the Court can take notice that not only is the common understanding of the language in JPD, which was have a bearing on, this was the language that the Court found pivotal, regarding is a substantially synonymous term. And, in fact, the Court could look, I looked it up, of course, Collins English Dictionary defines regard. Let me ask you, isn't, I'm struggling, we're all struggling with understanding the language, but resolving disputes regarding, but it's what it's regarding. It's regarding the earn-out report. JPD's broadening language was any issues having bearing on the arbitrated dispute. I'm struggling to see how those are parallel because, or why you think yours is a broader right because it's so limited to the earn-out report itself. You know, help me understand why that doesn't fit the classic conceptual idea of an accounting arbitration. We hire somebody for accounting issues. We arbitrate those accounting issues. But breach of contract issues, like in FITTECH, we do those separately. What makes yours flow everything, even the operational covenants, into an arbitration of accounting under the earn-out report? I would return to the language of the agreement. In Section 1.3c5, they define earn-out report to include a reasonably detailed report as to the revenue of the business for the applicable year, and as I mentioned earlier, including a breakout by service, product, and by specific customer name, as well as a determination as to the earn-out payment for such year. If you look to subsection ruminant numeral 6, it defines specifically the guidelines for calculating revenue for the 2009-2010 periods, which was the earn-out period. And I would note that this is a section under the earn-out section. And in that, it says that the buyer was required to include any and all revenue of the buyer with respect to products or services, service that is provided by seller as of the closing date. I'm in subsection b of 1.3c subsection 6. Product or service that is provided by seller as of the closing date, and that is defined as existing product. And it says under subsection c, that should be treated and recognized as includable revenue for purposes of the earn-out report. Subsection 7 similarly includes under subsection b, shall continue to make available to customers existing products, shall operate and fund the business with a view towards maximizing revenues consistent with seller's past practices. That answers my question. Okay. Then I have this question. When I first reviewed this case, the BRAC case jumped to mind because I was on that panel, I think, and it went the other way. So I'm not so concerned with JPD, which doesn't create a threshold, but rather is an example of something that was very broad. But BRAC went the other way, so you have to distinguish it, right, don't you? I would be happy to, and, yes, Your Honor, you were on that panel. BRAC contained different language, and it was a dispute. So how is it relevantly different? A relevantly dispute is that BRAC actually found that a determination for accounts payable was properly sent to the account arbitrator. That would be the first distinction. And the reasoning was those issues involved, like revenue, includable revenue here would be properly within the scope of the earn-out report, using the language from this case. So the court was actually dealing with an argument concerning a mutual mistake, trying to interpret whether there was a cap on damages, cap on liability, which would have been a contractual limitation not relevant to whether any of the data or numbers in the earn-out report were relevant. This is an outside dispute, and that's what the court was looking at in that. It was just that the language of the contract made it clear that there were two types of disputes. Is that basically the argument, unlike here? Unlike here. I want to answer the court's question. I think the language was that disputes regarding a limitation on overall damages would not have fallen under the language that would have been, in that case, the determination. What operational covenant provisions do you think fall outside this arbitration, if any? Do you think everything in this contract was arbitrable under this earn-out report arbitration? The answer is I don't know, and I would start with my thoughts on that. Number one, Judge Campbell and the court below is dealing with the dispute as presented, and I would say in the dispute notice, which is in the record at Document 14, it was a letter from Valerie Hunter, in the actual matters before the court, I think all of those, to the extent they touched on operational, were properly before. That's fine. And so you think that the regarding language really is sort of a maximizing type language that would allow for a broader, I guess, inclusion with respect to the arbitrability issues? I think it is. I don't think we need it, but I think it certainly is. If I read the definition from Collin's English, verb, to relate to, concern, have a bearing on. And when I look at the language there, I can't find a way to distinguish JPD from the term. I see my time is up. Thank you, Your Honor. Mr. McBrayer. Thank you. I want to make sure I'm clear in this limited amount of time about what actually got arbitrated here, because there seems to be the suggestion that if you look at the dispute notice and you find accounting terminology, therefore there must have been an accounting dispute arbitrated. That's not what got arbitrated in this case. In fact, we were fortunate, and then the accounting arbitrator in this case said specifically what this case turned on. He said this case turns on the language of the covenant, which reads as follows. Covenants regarding post-closing operation of business. During 2009 and 2010, buyer shall operate and fund the business with a view towards maximizing revenue. I thought the whole issue here was whether non-accounting issues are included. That's right. So saying that there are some non-accounting issues doesn't tell us whether non-accounting issues are arbitrable. But I guess, Judge, the point is it's not just that there's non-accounting. There was no accounting issues arbitrated. But it doesn't, I mean, we're still back to whether those kinds of issues can be arbitrated. That's right, and we're back to the contract language. And then on the distinction, BRAT, all I would say is refer to the language in BRAT, and I think you'll find that there's not that degree of difference that seems to be suggested here. In BRAT, they say BRAT will notify Noble as to whether it disagrees with any of the amounts included in the closing balance sheet. And the court goes on to point out that that closing balance sheet has an impact on the accounts payable liability. So whatever you determine on the closing balance sheet will have an impact on that separate contract claim, that separate contract claim that the court decided we need to drop because that was outside the arbitration clause. So I do not think BRAT Enterprises is distinguishable. And in fact, I think BRAT Enterprises is prescient in this sense. It anticipates Judge Thomas' opinion in Granite, the Supreme Court case from 2010, where the court makes clear we don't want you to presume an arbitration provision just because federal law likes arbitration. We want you to first start by looking at the party's agreement. We've got to look at the language of the time. That's right, and then only start applying presumptions if there is some ambiguity. And so the question here, I guess, for the court is do you find an ambiguity? And we would submit there is not. This arbitration clause is about what the numbers are, not about what they ought to be. How do you respond to your opposing counsel's argument that the definition within the contract speaks to what revenue should be there as opposed to what revenue actually was? Actually, I disagree with that because what you're doing, what it says is the earn-out report is defined as this document that has a reasonable detailed statement of revenues, capital R, broken down by product or service and customer. So you don't have any information other than what the actual numbers were. I mean, that's what you report. And so that's what UNIQ reacts to. Is that amended? Thank you, counsel. Thank you. This will be submitted.